

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 27, 1947

Hon. John H. Winters
Executive Director
State Department of
  Public Welfare
Austin, Texas

Opinion V-57

Re: Sufficiency of par-
ental consent for
adoption under Ar-
ticle 46a, Section
6, of the Texas
Statute, to place
the child for adop-
tion.

Dear Sir:

We have your request for an opinion on the fol-
lowing situation:

The child in question was born out of wedlock
in North Carolina on February 12, 1945. There-
after the mother, a resident of North Carolina,
turned the child over to the Superintendent of Pub-
lic Welfare of Rowan County, North Carolina, by an
instrument entitled "Parent's Surrender Affidavit
for Adoption Proceedings", which recites that the
mother voluntarily released all claim to the child.
The instrument reads further: "I do hereby grant
to the said Superintendent the authority to place
my child * * * in a foster home selected by the
said superintendent with the privilege of legal
adoption without further notice to me." In the
same instrument she agreed with the Superintendent
and any prospective adopting parents, that she
would make no claim to any estate of said minor,
etc. The Superintendent accepted the child and
placed it in a foster home in North Carolina. The
child is now in Texas. How it got to Texas, or
where and by whom it is being kept is not stated.
No further consent has been given by the mother
to any adoption. It is now contemplated that the
child will be adopted in Harris County, Texas, un-
der order of a Court of Harris County, Texas. The
consent of the Superintendent of Public Welfare of
Rowan County, North Carolina, has been obtained to
the contemplated adoption in Harris County. You
wish to know if the consent of such superintendent
alone is sufficient "consent" under Art. 46a-(6)

of the Texas statutes for the court to place the child for adoption.

The statute referred to, Art. 46a, reads as follows:

"Sec. 6. Except as otherwise amended in this Section, no adoption shall be permitted except with the written consent of the living parents of a child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, and control and management of other persons, and such parent or parents so abandoning and deserting such child shall not have contributed to the support of such child during such period of two (2) years, then in such event it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence, or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence.

* * * *. Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or other Court of competent jurisdiction; provided, however, that in such cases adoption shall be permitted only on consent of the superintendent of the home or school, or of the individual to whom the care, custody, or guardianship of such child has been transferred by a Juvenile Court or other Court of competent jurisdiction. In case of a child not born in lawful wedlock the consent of the father shall not be necessary. * * *."
(As amended, Acts 1937, 45th Legislature, p. 1324, Ch. 490, § 1)

The cases are uniform that consent is necessary to the Court's jurisdiction in an adoption proceeding. Pearce v. Harris, 134 S.W. (2d) 859; Tex. Jur., Sup. 1943, p. 62 (the section on Adoption being re-written in this supplement); 1 Am. Jur. 639; 642 (Adoption of Children, Sections 36 and 40).

The Texas case most nearly in point is that of Davis v. Sears, 35 S.W. 99 (1931). In that case, an unmarried mother, in 1925, when her baby was a week old, gave her child to the Hope Cottage of Dallas, with authority for that institution to secure a home for the child, with people of its selection, who might or might not adopt the baby. She waived all rights to the child. The infant was placed by the Hope Cottage with Davis and wife, who, without further consent of the mother or court proceedings involving the mother, adopted the child. The natural father thereafter married the mother. They had contributed nothing to its support and evidenced no interest in the child. After "about two years", the natural mother and father brought suit against the adopting parents to recover possession of the child. Upon a finding by the trial court that it would be to the best interest of the child, it was held that the adopting parents were entitled to keep the child. Upon appeal to the Court of Civil Appeals, the judgment of the trial court was reversed and rendered in favor of the natural parents. Sears v. Davis, 19 S.W. (2d) 159. (1929). Judge Funderburk sustained the contention that the adopting parents acquired no rights to the custody of the child by the writing which gave the child over to the institution for placing in a home and adoption. The opinion reads:

"An agreement respecting the relinquishment by a parent of the custody of a child, which does not contemplate adoption of the child by a particular person, is, we think, of no more binding effect than were all such agreements prior to the enactment of said statute. The statute itself, when read in the light of its purpose aforesaid, implies the invalidity of an agreement like the one we have here. It does not purport to be a transfer to any one. Rather, it is in terms a power

of attorney, attempting to authorize Hope
Cottage Association to transfer the cus-
tody of the child to some unknown person
who may have no intention to adopt it and
may have previously declared such want of
intention. * * *"

The Judge concluded, saying, "Such situations can
always be avoided by procuring a legal transfer of par-
ental authority or by making an adoption after the ex-
piration of a three year period abandonment." (The
abandonment period was later changed by statute to
two years.)

Upon further appeal (1931), the Supreme Court, act-
ing through the Commission of Appeals, reversed the
holding of the Court of Civil Appeals, and affirmed the
judgment of the trial court giving custody to the adop-
ting parents. The decision was based solely on the
grounds of the best interest of the child. That court
thought that the evidence showed conclusively that it
was to the best interest of the child that it be re-
tained in the custody of the adopting parents. (By
the time the Supreme Court acted in this case, the
child was five years old). Concerning the consent
given by the mother to the Hope Cottage, however,
the Court said: "The instrument by which the mother
evidenced her act of relinquishment is in no sense
an authority authorizing anyone to adopt the child."
Davis v. Sears, 35 S.W. (2d) 99.

The above case was decided upon an old statute
which provided that "the parent or parents of a child
who is to be so adopted _may_ by instrument in writing
* * transfer their parental authority * * _to the adop-
tive parents._ * * " A few months after the decision
in the Davis case, that statute was amended to read,
in part: "Except as otherwise specified in this Sec-
tion, no adoption shall be permitted except with the
written consent of the living parents of the child."
(Acts 1931, 42nd Leg. p. 300, Ch. 77.) The require-
ment that the consent of the parent be (directly) to
the "adoptive parent" was omitted, the requirement
of the 1931 Amendment being that the written consent
be given to the adoption. The statute was again
amended in 1937 but the wording of that particular
sentence was not changed. The 1937 Amendment is
the law today.

The weight of authority outside of Texas supports the proposition that the consent required for the adoption must be the consent of the natural parent or parents. That is, consent by an institution alone will not suffice. Adoption being wholly statutory, much depends, of course, upon the wording of the statutes in the different states. It is stated, however, in Vol. 1 of American Jurisprudence, page 639, that:

> "The written consent of a state board or of any guardian cannot be deemed a legal and sufficient substitute for the written consent of the natural parents."

It is announced in Volume 2 of Corpus Juris Secundum at page 385, (Adoption of Children, Sec. 21), that:

> "If consent is required, consent must be a consent to the adoption, not merely an authorization to find a home for the child with persons willing to adopt. If the consent of the child's parent is necessary, it must be the child's natural parents who give it, not the consent of others to whose care the child has been entrusted by the parents, * * *"

It is stated in the case of In Re McCann's Adoption, 159 Atlantic 334, (Penn. 1932) that:

> " * * * the mother left the child with the St. Vincents Hospital * * *, and had executed a surrender of the child to the hospital. The only consent attached to the petition is that of the hospital. The writing signed by the mother, authorizing the hospital to place the child in a good family 'for adoption', was not a consent made in this particular proceeding and did not satisfy the statute."

Similarly the case of In Re Holder, 10 S. E. (2d) 620 (N.C. 1940), a mother had given her infant child to the Children's Home Society of North Carolina, Inc., with the agreement that the Society might obtain for the child a legal adoption by such person or persons as may be chosen by the Society. The Society did place the child for adoption. The natural mother did not consent to the adoption. The Supreme Court of North

Carolina (from which the instant case arose) said:

> "We regard it (the consent) as insuffi-
> cient for that purpose. The consent noted in
> the adoption proceeding is the consent of the
> Children's Home Society of North Carolina, Inc.,
> and not that of the mother. * *. The consent
> must at least be in fair contemplation of the
> proposed adoption, and this includes its most
> essential feature - the identity of the adop-
> tive parents. Except in the case of abandon-
> ment, it is not without reason that society
> looks first to the concern and foresignt of
> the natural parents in selection for the child
> adoptive parents into whose hands they surrender
> the duties and burdens of custody, training,
> and tuition * * *."

After the above holding of the Supreme Court of
North Carolina, the statute in North Carolina was amend-
ed to read as follows:

> "Provided, that when the parent * * * of
> the child has in writing surrendered the child
> to a duly licensed child-placing agency, or the
> Superintendent of Public Welfare of the County
> and has in writing consented to adoption of the
> child by any person or persons to be designated
> by said agency or officer, this shall be deemed
> a sufficient consent for the purposes of this
> chapter, and no further consent of the parent
> * * * to a specific adoption shall be necessary.
> * * *." (Public Laws of North Carolina 1941,
> Ch. 281, p. 411)

While the consent given by the mother in this parti-
cular case would probably have been sufficient for an
adoption in North Carolina under similar circumstances,
it is not sufficient under the Texas Law. A comparison
of this statute with the Texas statute will demonstrate
their difference, - - the North Carolina statute plain-
ly providing that once parental consent was given to
the persons or agencies named above, no further consent
was required. The Texas statute, however, requires par-
ental consent to the adoption itself. This conclusion
is reached upon the consideration of the language used
in the Court of Civil Appeal's opinion set out herein
in Davis v. Sears, and the requirement of the present

statute that " * * no adoption shall be permitted except with the written consent of the living parents of a child. * * *" The consent to the actual adoption in the situation inquired about is not the consent of the parent, but is the consent of the Superintendent of Public Welfare of Rowan County, North Carolina.

This conclusion is further supported by the requirement of the Texas statute that where consent of the Superintendent of an institution is used for the adoption of a child, the parental rights of the natural parent must have been terminated by order of the Juvenile Court or other court of competent jurisdiction. That portion of the statute (Art. 46a(6), reads:

> "Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or any other Court of competent jurisdiction; provided, however, that in such cases adoption shall be permitted only on consent of the Superintendent of the home or school * * * to whom the care of the child has been transferred by a Juvenile Court or other Court of competent jurisdiction.

Article 46a, Sec. 6, makes two exceptions to the requirement of consent of the natural parents:

> (1) The first exemption is to cover the situation where the parent or parents have (a) voluntarily abandoned and deserted a child for two years, (b) shall have left it in the care and custody of others, and (c) have contributed nothing to its support for such time. The consent in such instance is to be given by the Juvenile Court or County Judge. Since the child involved was less than two years old at the time of your request, this provision is probably not applicable.

> (2) Such consent shall not be necessary when the parental rights have been terminated by order of the Juvenile Court or other Court of competent jurisdiction. In such instance, the consent is to be given by the Superintendent of an institution or individual into whose care the child has been entrusted. The parental

rights have not been terminated in your case
by a Court.  (see De Witt v. Brooks, 143, Tex.
122, 182 S.W. (2d), 687; and Matthews v.
Whittle, (Tex. Civ. App.), 149 S.W. (2d) 601.)

Your question is answered that the Court in this in-
stance does not have authority to proceed with the adop-
tion in controversy for lack of proper consent from the
natural parent.

## SUMMARY

The consent of the unmarried mother given
to the Superintendent of Public Welfare of Rowan
County, North Carolina, to place a child for ad-
option, coupled with the consent of such Super-
intendent to the particular adoption, is not
sufficient consent under Article 46a, Sec. 6 of
the Texas statutes, to authorize an adoption in
Texas.  In the absence of abandonment and fail-
ure to support, or the removal of parental rights
by order of the Juvenile Court or other Court
of competent jurisdiction, consent of the natural
parent of a child to the particular adopting par-
ent is required under the above statute.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By  *Joe R. Greenhill*

J. R. Greenhill
Assistant

*Charles P. Atkinson*

C. P. Atkinson
Assistant

JRG:acm:mrj

APPROVED FEB. 27, 1947

*Price Daniel*

ATTORNEY GENERAL OF TEXAS